**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BELTON REEVES,

                                        Petitioner,

                    - v -                                    Civ. No. 9:11-CV-442
                                                                      (DNH/RFT)

RUSSELL PERDUE, *Warden*,

                                        Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

**BELTON REEVES**
Petitioner*, Pro Se*
12353-040
Sandstone Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

**THE HON. RICHARD S. HARTUNIAN**           **CHARLES E. ROBERTS**
United States Attorney                      Assistant United States Attorney
Attorney for Respondent
James M. Hanley Federal Building
100 South Clinton Street
Syracuse, NY 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Petitioner Belton Reeves brings this Petition for *Habeas Corpus* relief, pursuant to

28 U.S.C. § 2241, on the grounds that he was deprived of due process at a disciplinary hearing held

on September 10, 2010, while he was incarcerated at Federal Correctional Institution ("FCI")

Elkton. *See generally* Dkt. No. 1, Pet. Respondent opposes the Petition. Dkt. No. 6, Resp. For the

reasons identified below, we recommend that the Petition be **DENIED** and no certificate of

appealability be granted.

## I.  BACKGROUND

The incidents relevant to the instant Petition occurred while Petitioner was an inmate at FCI Elkton.  *See* Pet.  On August 17, 2010, a detention order was issued by Lieutenant D. Johnson, authorizing confinement of the Petitioner in administrative detention "for [a]ssaulting another." Pet., Ex. 1, Admin. Detention Order, dated Aug. 17, 2010.  While in administrative detention, Petitioner was served with an incident report charging him with assaulting another inmate, in violation of Code 224. Pet. at p. 4.  The incident report stated that Petitioner "approached inmate Collins . . . and asked him for the six bags of coffee and stamps that was owed to him.  Inmate Collins stated he did not have any of the items.  [Petitioner] then admitted to striking inmate Collins on the right side of his face for not receiving any payment."  *Id.* at p. 4 & Ex. 2, Incident R., dated Aug. 17, 2010.  Plaintiff alleges that he made no such statement to the officer who authored the incident report.  *Id.* at p. 4.

On August 29, 2010, Chairperson Burns, a member of the Unit Disciplinary Committee ("UDC"), authorized an extension of Petitioner's disciplinary hearing, on the grounds that Petitioner's hearing could not be held within the ordinary period of three working days due to "administrative error."  *Id*. at p. 5 & Ex. 3, Extension of UDC Hr'g, dated Aug. 29, 2010.  That same day, Petitioner was given a formal notice of his upcoming hearing.  *Id.* at p. 5 & Ex. 4, Notice of Hr'g., dated Aug. 29, 2010.  The notice also inquired as to whether Petitioner would like the assistance of a staff representative or whether he would call any witnesses at the hearing.  *Id.* Plaintiff refused to sign the document on the grounds that more than three days had transpired since the incident and he had not yet had a hearing.  *Id.*  Petitioner also elected to reject the assistance of a staff representative, and did not request that any witnesses be called to testify on his behalf.

On September 2, 2010, Petitioner's disciplinary hearing was held. *Id.* at pp. 4–5,[1] & Ex. 5,

Disciplinary Hr'g Officer Rep. (hereinafter "DHO R."), dated Sept. 22, 2010, at p. 1. According to

the DHO Report, the DHO relied on evidence including, *inter alia*:

> the reporting officer's written statement [that] "On August 17, 2010, an interview
> was conducted with [Petitioner] . . . [wherein Petitioner] was asked if he had an
> altercation in the FCI Education Department. [Petitioner] stated he approached
> inmate Collins, . . . and asked him for six bags of coffee, and stamps, that was owed
> him. Inmate Collins stated he did not have any of the items. [Petitioner] then
> admitted to striking inmate Collins on the right side of the face, for not receiving
> payment.

DHO R. at p. 2.

Additionally, the DHO also relied on Petitioner's statement at the hearing that "the incident report

was partially true" and that he struck the other inmate in the face after the inmate offered Petitioner

sexual favors. DHO R. at p. 2. Petitioner claims that he "is no homosexual and has made no such

statement." Pet. at pp. 4 & 5–6. Nonetheless, Petitioner was found guilty, and sentenced to, *inter*

*alia*, fifteen days loss of good time credits. *Id.* at p. 6.

## II. DISCUSSION

A federal prisoner seeking to challenge the legality of his the execution of his sentencemay

do so by bringing a petition for a *writ of habeas corpus. See* 28 U.S.C. § 2241; *Carmona v. United*

*States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir. 2001) (noting that a challenge to federal prison

disciplinary sanctions, including the loss of good time credits, is a challenge to the execution of the

federal sentence). The provisions of § 2241 allow a petitioner to challenge "'the administration of

parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison

transfers, type of detention and prison conditions.'" *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006)

---

[1] Although Petitioner states on page four of his Petition that he appeared before the UDC on August 29, 2010,
both page five of his Petition and Exhibit 5, a copy of the DHO Report, indicate that the UDC hearing was held on
September 2, 2010.

(quoting *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001)). To challenge the outcome of a prison

disciplinary action, the petitioner must establish that some aspect of the disciplinary process violated

one of his constitutional rights. *See* 28 U.S.C. § 2241(c)(3). Furthermore, prior to filing a petition

pursuant to § 2241, prisoners must exhaust any available administrative remedies. *Carmona v.*

*United States Bureau of Prisons,* 243 F.3d at 634.

Petitioner claims that his constitutional rights to due process were violated because: (1) his

hearing was not held within three days of the incident as required by prison regulations, and (2) he

did not receive an unbiased disciplinary hearing. *See generally* Pet. Although he concedes that

Petitioner exhausted his administrative remedies, Respondent contends that the Petition should

nonetheless be denied on the grounds that Petitioner has failed to allege a due process or other

constitutional violation. *See generally* Resp. We agree with Respondent.

The Second Circuit concisely stated the applicable standard of review to be applied in cases

such as this:

> Because "[p]rison disciplinary proceedings are not part of a criminal prosecution, ...
> the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*
> *v. McDonnell*, 418 U.S. 539, 556 . . . (1974). Rather, to comport with procedural due
> process, an inmate charged with a violation in a disciplinary hearing must be given:
> "(1) advance written notice of the disciplinary charges; (2) an opportunity, when
> consistent with institutional safety and correctional goals, to call witnesses and
> present documentary evidence in his defense; and (3) a written statement by the
> factfinder of the evidence relied on and the reasons for the disciplinary action."
> *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 . . . (1985)
> (citing *Wolff*, 418 U.S. at 563-67 . . . ). Indeed, we have stressed that, in the context
> of such proceedings, "the only process due an inmate is that minimal process
> guaranteed by the Constitution, as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d
> 106, 119 (2d Cir. 2004) (emphasis in original). Finally, with respect to the revocation
> of good conduct credits, due process requires that "the findings of the prison
> disciplinary board [b]e supported by some evidence in the record." *Hill,* 472 U.S.
> at 454, 105 S.Ct. 2768.

*Williams v. Menifee*, 331 F. App'x 59, 60-61 (2d Cir. 2009).

-4-

Here, Plaintiff received written notice of the claim against him on September 17 *via* the incident report, and again on September 29, when he was presented with a formal notice of the disciplinary hearing. Both documents informed Petitioner of the charge against him – violation of Code 224, or assault. *See* Pet. at p. 4 & Exs. 2, Incident R., & 4, Notice of UDC Hr'g. Given the fact that Petitioner's disciplinary hearing was not held until September 2, 2010, it is clear that Petitioner received adequate notice of the charges against him well in advance of the minimum period of twenty-four hours proscribed by the Constitution. *See Wolff v. McDonnell*, 418 U.S. at 564 (concluding that "no less than 24 hours, should be allowed to the inmate to prepare for [a disciplinary hearing]"). Moreover, Petitioner was offered the assistance of a staff representative as well as the right to present witnesses, which he declined. Pet., Ex. 4, Notice of UDC Hr'g. Lastly, Petitioner received a written copy of the DHO Report, stating the evidence that was relied upon by the DHO, and explaining the reasons for the decision. *Id.*, Ex. 5. Thus, Petitioner received all of the process that was due to him pursuant to *Wolff v. McDonnell*.

Accordingly, Petitioner's claim that his right to due process was violated because his hearing was not held within seventy-two hours from the time of the incident, as required by prison regulations, fails. *See Crum v. Dodrill*, 562 F. Supp. 2d 366, 381 n.40 (N.D.N.Y. 2008) (citing cases for the proposition that where a petitioner receives all of the process he was due under *Wolff v. McDonnell*, "his argument that his hearing was held a few days late does not rise to the level of a constitutional violation").

Next, Petitioner alleges that his guilt was pre-determined and that his hearing officer was biased. *See generally* Pet. "[W]ith respect to a disciplinary hearing, due process requires, among other things, that (1) the inmate be judged by a fair and impartial hearing officer; and (2) the

disciplinary conviction be supported by some evidence." *Simon v. Selsky*, 2002 WL 1205737, at *4 (S.D.N.Y. Mar. 12, 2002) (citing *Superintendent v. Hill,* 472 U.S. at 454; *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir. 1999); & *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir. 1983)).

According to the DHO Report, the bases for Petitioner's conviction was founded on, *inter alia*, (1) the reporting officer's written statement – which stated that Petitioner admitted to the reporting officer that he slapped inmate Collins, and (2) Petitioner's statement during the disciplinary hearing – in which Petitioner admitted the incident report was "partially true" and that he had slapped another inmate in the face. DHO R. at p. 2. The Some evidence standard has been held to be satisfied in cases where the hearing official relies almost entirely on an incident report written by a non-testifying officer. *See Kotler v. Daby*, 2013 WL 1294282, at *13 (N.D.N.Y. Mar. 28, 2013) (citing *Chreech v. Schoellkoph,* 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010)); *see also Harrison v. Querns,* 2008 WL 495505, at *4 (W.D.N.Y. Feb.21, 2008) (misbehavior report and inmate's testimony during disciplinary hearing admitting to participation in a work stoppage constitute "some evidence" and satisfy due process). Yet, construed liberally, Plaintiff seems to be arguing that these statements did not constitute sufficient evidence because he never made them. *See, e.g.,* Pet. at p. 4.

Plaintiff's self-serving statements that he never admitted to slapping another inmate, either to the officer who wrote the incident report, or during his testimony at the disciplinary hearing, do not undermine the sufficiency of the evidence relied upon by the DHO. Critically, there is nothing in the Petition to indicate that the DHO should have questioned the reliability of the reporting officer, or his written report. In fact, although Petitioner now claims that he never made any such statements, he does not claim that he contested the veracity of the reporting officer's written report

during the disciplinary hearing. Nor does he raise this issue in his subsequent attempts to appeal the disciplinary decision, despite the fact that he had been notified that his conviction was based on his own admissions at the hearing as well as the statements contained in the reporting officer's written report. *See* Pet., Exs. 6, Pet.'s 1st Appeal, dated Oct. 28, 2010, & 8, Pet.'s 2nd Appeal, dated Jan. 18, 2011. Indeed, in his second appeal, Petitioner stated: "I am not debating that I committed a prohibited act. My dissatisfaction is founded on the fact that my due process right[s] were violated." *Id.*, Ex. 8, Pet.'s 2nd Appeal. Thus, while reliability is a factor in determining whether the evidence relied upon is sufficient to support a disciplinary conviction, *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004), here there is simply no reason to believe that at the time of the hearing, the DHO had or should have had any reason to doubt the reliability of the incident report.

With regard to the second requirement, Petitioner makes several claims regarding the issue of bias or a lack of impartiality at the hearing. For example, Petitioner notes that the person that signed the authorization to extend his disciplinary hearing beyond the ordinary period of three working days, Chairman Burns, was also a member of the UDC. Pet. at p. 6. He also alleges that the author of the administrative order confining him to administrative detention on the day of the incident, Lieutenant D. Johnson, had predetermined his guilt because he wrote that Petitioner was "being placed in Administrative Detention for Assaulting another." *See* Pet. at p. 3 & Ex. 1, Detention Order. However, neither of these allegations nor any other made by the Petitioner directly implicate the DHO, T. Montgomery, in any way. *See* DHO R. at p. 3. Thus, Petitioner has failed to establish that he was judged by an unfair and biased hearing officer. *See Simon v. Selsky*, 2002 WL 1205737, at *4.

Accordingly, we recommend that the Petition be **DENIED** and no certificate of appealability

be granted.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: May 6, 2014
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge